ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **ROY MILLER**<br>DEMANDANTE(S)-PETICIONARIA(S)<br><br>V.<br><br>**AMY TYLER LOUTHAN**<br>DEMANDADA(S)-RECURRIDA(S) | **KLCE202500109** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **FAJARDO**<br><br>Caso Núm.<br>**FA2022RF00189** (203)<br><br>Sobre:<br>Custodia |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Hernández Sánchez.[1]

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 7 de febrero de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **ROY ELDON MILLER** (señor **MILLER**) mediante una *Petición de Certiorari* instada el 5 de febrero de 2025. En su recurso, nos solicita que revisemos la *Orden* decretada el 23 de enero de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Fajardo.[2] Mediante la referida determinación, se autorizó que la señora **AMY TYLER LOUTHAN** (señora **LOUTHAN**) continuara utilizando los servicios de los intérpretes seleccionados y requirió que se verbalizara la traducción para el récord.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] De conformidad con la Orden Administrativa OATA-2023-066 de 11 de abril de 2023, se designa al Juez Hernández Sánchez en sustitución de la Jueza Rivera Pérez.

[2] Dicho dictamen judicial fue notificado y archivado en autos el 24 de enero de 2025. Apéndice de la *Petición de Certiorari*, págs. 16- 18. La referida *Orden* fue enmendada el 27 de enero de 2025, notificada el mismo día, a los efectos de corregir en el texto la palabra "inglés".

## - I -

Fruto de la relación entre los señores MILLER y LOUTHAN, el día 16 de julio de 2013, nació el menor ITML. El 27 de junio de 2017, en el caso NSRF201600934, se prescribió *Sentencia* en la cual, entre otras cosas, se concedió la custodia, con facultades tutelares, del menor ITML a la señora LOUTHAN y no se dispusieron relaciones paterno filiales por la situación legal por la cual atravesaba el señor MILLER.

Después, el 9 de septiembre de 2022, el señor MILLER incoó una *Demanda* solicitando que se le concediera la custodia de su hijo menor de edad ITML, y se suspendieran las relaciones maternofiliales.[3] El 27 de noviembre de 2022, la señora LOUTHAN presentó su *Contestación a Demanda* conteniendo *Defensas Afirmativas* y *Reconvención*. Al día siguiente, se dispuso *Orden* requiriéndole al señor MILLER contestar la *Reconvención* y refirió el caso a la Unidad Social de Relaciones de Familia y Asuntos de Menores (Unidad Social) para una evaluación social. Así las cosas, el 13 de diciembre de 2022, el señor MILLER cursó un *Requerimiento de Admisiones*. En seguida, el 20 de diciembre de 2022, el señor MILLER presentó su *Contestación a Reconvención*.

Más tarde, el 1 de febrero de 2023, el señor MILLER presentó una *Moción en Solicitud de Sentencia Sumaria*. Dicha solicitud de sentencia sumaria, entre otras cosas, está acompañada de copia del *Requerimiento de Admisiones*. A los pocos días, el 5 de febrero de 2023, la señora LOUTHAN presentó su *Moción en Oposición a Sentencia Sumaria*. Ante esta situación, el 13 de febrero de 2023, el foro *a quo* pronunció *Orden* expresando: "Moción de sentencia sumaria presentada prematuramente. Está en curso un estudio social forense. Se ordena cumplir con lo ordenado y con relación al estudio de su hogar".[4]

---

[3] Entrada núm. 1 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Esta decisión judicial fue notificada y archivada en autos el 14 de febrero de 2023.

El 1 de marzo de 2023, el señor **MILLER** presentó su *Moción en Solicitud de Reconsideración*. El 6 de marzo de 2023, el foro de instancia intimó: "[n]o ha lugar. Se sostiene la determinación del Juez Ángel Candelas Rodríguez. En casos de familia es imperativo contar con el informe social a los fines de que el Tribunal pueda tomar una determinación informada y, sobre todo, en el mejor bienestar del menor".[5]

Luego de varias incidencias procesales, el 27 de noviembre de 2024, el señor **MILLER** presentó una *Urgente Moción en Solicitud de Orden*.[6] Puntualizó que el 25 de noviembre de 2024, el foro de instancia concretó que necesitaba un traductor para la totalidad del proceso para evitar cualquier probabilidad que alguna determinación fuera declarada nula o revocada por el Tribunal de Apelaciones.[7] Además, manifestó su preocupación de que la señora **LOUTHAN** tampoco entendía la totalidad de lo relatado en la audiencia, toda vez que la deposición que le fue tomada se efectuó mayormente en inglés. Ante ello, solicitó se le ordenara a la señora **LOUTHAN** a contratar un traductor para la audiencia en su fondo.

El mismo día, el señor **MILLER** presentó una *Urgente Moción en Solicitud de Orden en Relación a Traductor a ser Contratado* en la cual expuso que necesitaba un traductor para la totalidad del proceso e interpeló autorización para contratar un traductor certificado por las cortes de la República Dominicana.[8] El 3 de diciembre de 2024, se declaró no ha lugar el petitorio del señor **MILLER** y se le informó que se le podía proveer un listado de los traductores certificados de Puerto Rico.[9]

---

[5] El 7 de agosto de 2023, en el caso **KLCE202300318**, este Tribunal emitió una *Resolución* a los efectos de denegar el *Certiorari* entablado por el señor **MILLER**, en el cual solicitaba que se revocara la providencia que declaraba prematura su presentación de la sentencia sumaria.

[6] Entrada núm. 345 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[7] Entrada núm. 353 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[8] Entrada núm. 346 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[9] Apéndice de la *Petición de Certiorari*, pág. 1.

Seguidamente, el 9 de diciembre de 2024, se celebró la continuación de la *Vista de Impugnación de Informe Social* a la cual comparecieron ambas partes acompañadas por sus respectivas representaciones legales. Además, estuvieron presentes la señora María Cristina Colón, intérprete del señor MILLER; la señora Anaís Velázquez Garay y el señor Luis Burset Rivera, intérpretes de la señora LOUTHAN.

Surge de la *Minuta Resolución* del 9 de diciembre de 2024 , que el señor MILLER presentó su preocupación sobre si los intérpretes de la señora LOUTHAN estaban certificados para ejercer la traducción.[10] El señor Burset Rivera exteriorizó que la certificación para intérprete se requiere en el tribunal federal, no en los tribunales de Puerto Rico. Asimismo, afirmó que anteriormente había asistido a casos en los cuales no le exigieron la susodicha certificación. El Tribunal aleccionó que les proveyó una lista de intérpretes certificados por la Oficina de Administración de los Tribunales (OAT) a las partes. Ello para que uno de estos les asistiera en el caso.

La licenciada Rodríguez Santos, representación legal de la señora LOUTHAN, planteó que en ningún momento fue requerido la certificación de los intérpretes contratados. El tribunal primario propuso que los intérpretes contratados presentaran la documentación requerida por OAT para que fuesen certificados y le sugirió que de lo contrario contrataran alguno de la lista provista que estuviese disponible. Ante ello, la licenciada Rodríguez Santos anunció que solicitaría reconsideración.

Celebrada la audiencia, el 3 de enero de 2025, la señora LOUTHAN presentó una *Moción en Torno a la Utilización de Interpretes* en la cual razonó, si bien el Poder Judicial cuenta con un Registro de Intérpretes de Idiomas, se establecen unas excepciones para juramentar a una persona que no esté registrada, las cuales aplicaban a la situación particular de este caso.[11]

---

[10] *Íd*, págs. 6- 10.
[11] Entrada núm. 361 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Asimismo, apuntaló que el Poder Judicial también dispone que "cuando la persona solicite utilizar su propio intérprete y esté disponible para hacer la interpretación, el Juez o la Jueza podrá autorizarlo si las circunstancias del caso así lo ameritan. De ser autorizado, la parte que interese utilizar su propio intérprete asumirá los costos correspondientes". Finalmente, reiteró su solicitud para que se permitieran los intérpretes ya contratados. En consecuencia, el 7 de enero de 2025, se concretó una *Orden* en la cual se dispuso "Discutida en corte abierta".[12]

Ulteriormente, el 17 de enero de 2025, el señor **MILLER** presentó una *Oposición a Reconsideración*.[13] Comunicó que no concurrían las condiciones citadas en la reconsideración para utilizar un intérprete que no se encuentre inscrito en el Registro de Intérpretes de Idiomas del Poder Judicial. Enfatizó que permitir a la señora **LOUTHAN** utilizar los intérpretes que propone, abría la puerta para que pueda argumentar que no entendió bien lo sucedido en la audiencia y solicitar la revocación de cualquier dictamen que se emitiera.

Evaluadas las posturas de ambas partes, el 23 de enero de 2025, se prescribió la *Orden* recurrida.[14] En síntesis, dispone lo siguiente:

> Examinada la "Moci[ó]n de Reconsideraci[ó]n" presentada por la parte demandada, as[í] como su correspondiente escrito de oposici[ó]n, el Tribunal declara la misma Ha Lugar. Por consiguiente, se determina que la parte demandada puede continuar utilizando los servicios de los int[é]rpretes seleccionados, los cuales comparecieron a la primera vista. No obstante, a los fines de determinar si estos est[á]n efectuando una traducci[ó]n fiel y exacta del idioma español al ing[lé]s, se ordena que, en las pr[ó]ximas vistas, estos verbalicen la traducci[ó]n para r[é]cord. De la parte demandante entender que no se est[á] cumpliendo con la traducci[ó]n fiel y exacta, deber[á] informarlo de manera oportuna al Tribunal.

El 27 de enero de 2025, se celebró la continuación de la vista, y el Tribunal, en relación a los intérpretes expuso lo siguiente:

> [...]
> El Tribunal hace constar que en lo prospectivo los intérpretes tendrán que verbalizar la traducción para constatar que es una fiel

---

[12] Entrada núm. 362 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[13] Apéndice de la *Petición de Certiorari*, págs. 12- 15.
[14] Apéndice de la *Petición de Certiorari*, págs. 12- 15.

y exacta, por lo que sugiere que se utilice los mismos intérpretes para agilizar los procesos.[15]

[...]

En desacuerdo con las determinaciones, el 5 de febrero de 2025, el señor **MILLER** incoó el recurso atinente, y le imputa al foro de instancia los siguientes señalamientos de error:

Erró el TPI al permitir que la demandada utilice traductores no inscritos al registro para la vista en su fondo y denegar a Roy utilizar traductores no inscritos a dicho registro.

Erró el TPI al no anular lo que sucedió en el primer día de la vista de impugnación porque los traductores utilizados por la demandada no están inscritos al registro y ni siquiera han sido cualificados por el TPI.

Erró el TPI al comenzar y continuar una vista en su fondo sin haber tomado una determinación sobre una moción de sentencia sumaria que nunca fue decidida.

El mismo día, se presentó una *Solicitud en Auxilio de Jurisdicción*. En dicha fecha, pronunciamos *Resolución* concediendo un plazo perentorio hasta el 6 de febrero de 2025, en o antes de las 5:00pm, para exponer posición sobre el recurso y la solicitud de *auxilio de jurisdicción*. A las 4:07 de la tarde, la señora **LOUTHAN** presentó una *Urgente Moción en Oposición a Solicitud de Orden en Auxilio de Jurisdicción*, procurando la desestimación del recurso por falta de notificación.

Ese mismo día, formulamos *Resolución* requiriendo al señor **MILLER** acreditar la notificación del recurso y auxilio de jurisdicción a la señora **LOUTHAN**. A las 6:50 de la tarde, el señor **MILLER** consignó la notificación mediante *Moción en Cumplimiento de Orden y en Oposición a Urgente Moción en Oposición a Solicitud de Orden en Auxilio de Jurisdicción*. El 6 de febrero de 2025, la señora **LOUTHAN** presentó *Moción Reiterando Oposición a Solicitud de Orden en Auxilio de Jurisdicción*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición

---

[15] Entrada núm. 375 del caso FA2022RF00189 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

## - II –

### - A – *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[16] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[17]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[18] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[19]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[20] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[21] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o

---

[16] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[17] *Íd.*
[18] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[19] *Íd.*
[20] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[21] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[22]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[23]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[24] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[25]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[26] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si

---

[22] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[23] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[24] *Íd.*
[25] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[26] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[27] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[28]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[29] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[30]

### - B – *Interpretes*

La Regla 614 de las de Evidencia instituye lo siguiente concerniente al uso de los intérpretes:

> Cuando por desconocimiento del idioma español o cualquier incapacidad por parte de una persona testigo, sea necesario el uso de una o un intérprete, **ésta o éste cualificará como tal si la Jueza o Juez determina que puede entender o interpretar las expresiones de la persona testigo. La persona que actúa como intérprete estará sujeta a juramento de que hará una interpretación y traducción fiel y exacta de lo declarado por la persona testigo.**

> Cuando una persona testigo, que no sea parte en el pleito, padezca de sordera profunda, severa, moderada o leve, o refleje cualquier otra situación de hipoacusia o condición que le impida comunicarse efectivamente, el tribunal presumirá que necesita un intérprete de lenguaje de señas y/o labio lectura, o algún acomodo razonable que garantice la efectividad de la comunicación, y se lo asignará con cargo a la parte que interesa presentar a la persona como testigo. La parte que alegue que la persona testigo no necesita un intérprete, o el acomodo razonable en controversia, tendrá el peso de demostrarlo. **Con ese fin el tribunal podrá realizar una vista, si así lo estima necesario.**

---

[27] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[28] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*
[29] *García v. Asociación*, 165 DPR 311, 322 (2005).
[30] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

(Énfasis nuestro).

La Carta Circular Núm. 15, emitida el 6 de febrero de 2019, decreta que como resultado de la aprobación de la Ley Núm. 174 de 5 de agosto de 2018, conocida como la *Ley para Viabilizar el Acceso a la Justicia de las Personas que Padecen de Condiciones que Impiden su Comunicación Efectiva*, y en beneficio de las personas sordas o que padezcan de una condición que les impida comunicarse efectivamente, así como las personas que requieren la asistencia de un intérprete de idiomas, las *Normas y Procedimientos para la Selección, Solicitud y Compensación de Intérpretes en la Rama Judicial* (*Normas*) fueron revisadas.[31] Ello, para instaurar cuando le corresponde al Poder Judicial proveer los servicios de intérpretes, los requisitos y la compensación. Las *Normas* concierta que se proveerán servicios de intérpretes de idiomas, en los procedimientos que se lleven a cabo ante los tribunales en los siguientes procesos:

1. En casos criminales
   [...]
2. En casos de menores
   [...]
3. En casos civiles:
   a. Cuando sea para las partes en casos para los cuales la Rama Judicial recibe fondos federales que permitan sufragar los servicios de interpretación de idiomas, tales como: casos de órdenes de protección por violencia doméstica, violencia sexual, acecho, maltrato o negligencia de menores y remoción de menores, y cualquier otro tipo de caso que pueda aplicar por asignaciones futuras de fondos federales.
   b. Cuando estén implicadas las necesidades fundamentales del ser humano según los criterios establecidos en el Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico y la normativa relacionada aprobada por la Oficina de Administración de Tribunales.

De igual manera, el Poder Judicial ha establecido los requisitos para las personas que deseen fungir como intérpretes de idiomas que formen parte del Registro de Intérpretes de Idioma del Poder Judicial.[32] A manera de

---

[31] Normas y Procedimientos para la Selección, Solicitud y Compensación de Intérpretes en la Rama Judicial, vigentes a partir de 6 de febrero de 2019.

[32] Toda persona que interese formar parte del Registro de Intérpretes de Idiomas del Poder Judicial tendrá que:
- Ser mayor de 21 años.

excepción, un juez o una jueza podrá juramentar como intérprete a alguna persona que se encuentre presente durante la audiencia cuando concurran las siguientes condiciones: (1) Cuando se trate de un caso en un turno o en una situación de emergencia; (2) Que la persona demuestre ser diestra en los dos idiomas necesarios para que funja como intérprete; (3) Que la persona no tenga interés en el caso; y (4) Que no esté disponible ninguna de las personas contempladas en el Registro de Intérpretes de Idiomas del Poder Judicial. Asimismo, cuando la persona **solicite utilizar su propio intérprete y esté disponible para hacer la interpretación, el Juez o la Jueza podrá autorizarlo si las circunstancias del caso así lo ameritan**. De ser autorizado, la parte que interese utilizar su propio intérprete asumirá los costos correspondientes.

El Registro de Intérpretes del Poder Judicial provee los servicios de intérpretes inscritos para cuando una persona que no entienda el idioma inglés o español en un procedimiento, sea criminal o civil, lo solicite, y el Tribunal tiene la obligación de proveer las opciones disponibles para escoger, luego de evaluar las necesidades de la persona solicitante.

- III –

En el caso de marras, el señor MILLER argumenta que sin nuestra intervención para determinar si los intérpretes de la señora LOUTHAN son los adecuados, se expone a una posible determinación anulable, toda vez que abre la puerta para que la señora LOUTHAN alegue en su momento que no entendió el proceso, provocando costos adicionales y atrasos para dilucidar

---

- Completar la Solicitud para Ingresar al Registro de Intérpretes de Idiomas (OAT 1393)
- Presentar los documentos que correspondan
  - o Certificación de haber aprobado cursos formales de interpretación en universidades o centros especializados reconocidos
  - o Certificación de haber aprobado el Federal Court Interpreter Certification Examination
  - o Prueba fehaciente o certificación de que se dedican a la interpretación a pesar de no contar con estudios formales en el área
  - o Prueba fehaciente o certificación bajo juramento de que, por su dominio del idioma español o de otros idiomas, podría servir como intérprete a pesar de no contar con educación formal en el área de la interpretación ni dedicarse a prestar tal servicio.

la controversia de la custodia del menor ITML. Puntualiza que sería irrazonable e injusto permitir que la señora LOUTHAN utilice traductores no inscritos en el Registro de Intérpretes del Poder Judicial y a él no, creando así una ventaja económica indebida para la señora LOUTHAN. Ello, ya que recibe servicios legales gratuitos a pesar de tener activos e ingresos considerables. Reiteró que los intérpretes contratados por la señora LOUTHAN no fueron debidamente cualificados por el foro de instancia. Finalmente, añadió que a pesar de que en varias ocasiones ha informado que la sentencia sumaria no se ha resuelto, el Tribunal ha decidido continuar con la audiencia en su fondo.

Por su parte, la señora LOUTHAN argumenta que el recurso presentado es tardío, dado que la *Orden* que le denegó el uso de los intérpretes de la República Dominicana fue dictada el 2 de diciembre de 2024, notificada el 3 de diciembre de 2024, y no fue objeto de reconsideración ni revisión. Aun así, razona que el señor MILLER objetó la selección de intérpretes luego de comenzados los procedimientos, pues estos no figuran en el Registro de Intérpretes de Idiomas del Poder Judicial. Arguye que las Reglas de Evidencia, ni el Programa de Acomodos Razonables imponen como requisito que un intérprete esté registrado en la OAT del Poder Judicial para poder brindar sus servicios. Manifestó que tanto la Regla 614 de las de Evidencia, como el Programa de Acomodos Razonables y el Registro de Intérpretes de Idiomas del Poder Judicial establecen que cuando una persona, por desconocimiento del idioma español ruegue el uso de un intérprete, el Juez o la Jueza podrá autorizarlo si las circunstancias del caso lo ameritan y se asegure que puede entender o interpretar las expresiones de dicho intérprete, así como juramentarlo.

Surge de la *Minuta Resolución* del 9 de diciembre de 2024, que el licenciado Soler Martínez, representación legal del señor MILLER, comunicó al Tribunal su preocupación sobre si los intérpretes de la señora LOUTHAN

estaban certificados para ejercer la traducción en el caso. En respuesta, el foro recurrido informó que luego de consultar con el Director Administrativo del Tribunal, le fue confirmado que los intérpretes debían estar certificados para ejercer la traducción. Por ello, la licenciada Rodríguez Santos, representación legal de la señora LOUTHAN, expresó que en ningún momento le fue requerida la certificación de los intérpretes contratados. Más aún, el mismo foro manifestó que los intérpretes de la señora LOUTHAN no estaban certificados para la función de intérpretes.[33] Por lo que, se instruyó sobre los intérpretes y exhortó que debían presentar sus credenciales o certificaciones para fungir como traductores ante el tribunal.

Luego de evaluado nuestro expediente, así como las minutas y la documentación del sistema expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC), colegimos que la señora LOUTHAN no presentó las credenciales de los intérpretes contratados para traducir en los procedimientos o audiencia sobre impugnación de informe social. De igual manera, es importante enfatizar que el foro primario no examinó a los efectos de cualificar a las personas que la señora LOUTHAN interesaba contratar como intérpretes en este caso.[34]

Ambas partes han comparecido con sus propios intérpretes. Por ende, el foro de instancia debió **cualificar** correctamente a los intérpretes contratados por la señora LOUTHAN. En específico, constatar si en efecto tienen educación formal en el área de la interpretación, si tienen las cualificaciones necesarias para fungir como intérpretes, si son diestros en ambos idiomas, y certificaciones y/o credenciales que así lo acrediten.

En cuanto a la reclamación del señor MILLER concerniente a su solicitud para contratar intérpretes de la República Dominicana, entendemos

---

[33] Apéndice de la *Petición de Certiorari*, pág. 9.
[34] Debemos concluir que, en este caso, el Tribunal no está obligado a proveer intérprete. Toda vez que no es un caso que trate de personas sordomudas, que tengan algún impedimento que les impida comunicarse efectivamente o un caso para el cual se reciben fondos federales.

que es tardía, toda vez que de la *Orden* expedida el 2 de diciembre de 2024 no se presentó una reconsideración y tampoco solicitó la revisión ante este Tribunal. A tenor con lo anterior, concluimos que no se incurrió en el primer error señalado por el señor MILLER en su recurso.

El foro de instancia incidió en el segundo error al permitir los intérpretes contratados por la señora LOUTHAN, sin antes **cualificarlos**. Ello, toda vez que es un requisito que el Juez o la Jueza que preside el caso debe asegurarse que las personas candidatas a intérpretes puedan entender e interpretar con claridad las expresiones de la persona que será testigo. Así las cosas, se modifica la *Orden* emitida el 23 de enero de 2025 por el foro primario, a los efectos de establecer que los intérpretes no tienen que ser parte del Registro de Intérpretes de Idiomas del Poder Judicial, pero si tienen que ser cualificados por el Tribunal.

El tribunal no incurrió en el tercer error. Véase *Resolución* del caso KLCE202300318.

## - IV -

De conformidad a los fundamentos expuestos, *expedimos* el auto *Certiorari* instado el 5 de febrero de 2025 por el señor ROY ELDON MILLER; y *modificamos* la *Orden* impugnada a los efectos de que el Tribunal de Primera Instancia deberá **cualificar** a los intérpretes contratados por la señora LOUTHAN. Se declara *no ha lugar* la solicitud de auxilio de jurisdicción presentada el 5 de febrero de 2025 por el señor ROY ELDON MILLER. Devolvemos el caso al foro de origen para la continuación de los procedimientos de forma consistente con nuestros pronunciamientos.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[35]

---

[35] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del

**Notifíquese inmediatamente al Tribunal de Primera Instancia, y a las representaciones legales de las partes mediante vía telefónica, y correo electrónico.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.